UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Michael Bartlett          :
                          :
v.                        :    No. 3:03cv430 (JBA)
                          :
The Connecticut Light And :
Power Company             :

### Ruling on Plaintiff's Motion to Remand [Doc. # 12]

Plaintiff Michael Bartlett ("Bartlett") commenced this suit against defendant, The Connecticut Light and Power Company ("CL&P"), in the Superior Court for the State of Connecticut, Judicial District of New Britain, alleging violations of Connecticut General Statutes §§ 31-51m and 31-51q, and intentional infliction of emotional distress. On March 12, 2003, CL&P removed this case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 on the ground that federal jurisdiction exists over plaintiff's claim of intentional infliction of emotional distress as preempted by the Labor Management Relations Act, 29 U.S.C. § 141, et seq. Now pending before the Court is plaintiff's motion to remand to the Superior Court for the State of Connecticut. [Doc. # 12]. Oral argument on this motion was held on January 15, 2004. For the reasons discussed below, plaintiff's motion is granted.

### I. Background

On January 8, 2002, Michael Bartlett was terminated from his

1

job with CL&P, where he had worked in various capacities for over eighteen years. While employed at CL&P, Bartlett was a member of the International Brotherhood of Electrical Workers, Local Union No. 457 ("Local 457"), and was covered by the collective bargaining agreement ("CBA") between Local 457 and CL&P. The union challenged Bartlett's termination through the arbitration process established in the CBA, and at the arbitration, the arbitrator ruled that Bartlett had been properly terminated for "just cause."

In the plaintiff's original state court complaint, Bartlett claimed that CL&P terminated his employment in retaliation for having reported suspected violations of law to a public body, in violation of Conn. Gen. Stat. § 31-51m, and for having engaged in protected speech, in violation of Conn. Gen. Stat. § 31-51q. See Complaint [Doc. # 1, Ex. 1] at Counts 1-2. Specifically, he stated that throughout the year 2001, before his termination, he reported to the appropriate authorities CL&P activities that he believed to be dangerous to the public, such as "pumping contaminated oil into catch drains leading to the public water supply," "ventilating contaminated manholes by blowing friable asbestos into the air," and failing to hire police officers to monitor traffic when working on busy streets. See id. at Count 1, ¶ 6. Bartlett also claimed intentional infliction of emotional distress, stating that the manner in which CL&P

"terminated plaintiff's employment was extreme, outrageous and exceeded all bounds of decency." Id. at Count 3, ¶ 9.

On March 12, 2003, CL&P timely filed a Notice of Removal to federal court, pursuant to 28 U.S.C. §§ 1441 and 1446, removing the case to this Court on the ground that the federal courts have subject matter jurisdiction over plaintiff's intentional infliction of emotional distress claim because it is based on a violation of a collective bargaining agreement and therefore is governed by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq. See Notice of Removal [Doc. # 1] at 2.

On April 16, 2003, Bartlett amended his complaint, recasting his claim for intentional infliction of emotional distress to focus on the defendant's conduct during the course of his employment, rather than during the termination process. He alleged that he was "[r]epeatedly threatened and abuse[ed] . . . for reporting the defendant to various agencies for hazardous violations;" "[r]equir[ed] . . . to work under the conditions that were unsafe to his physical and emotional well being;" "followed by a private detective," and that the defendant "made false accusations" about his work performance. See Amended Complaint [Doc. # 10] at Count 3, ¶ 9. Plaintiff was subsequently granted leave to file a second amended complaint. The Second Amended Complaint, filed on May 27, 2003, specified that the Defendant's conduct was "unrelated to the terms and

conditions of the Collective Bargaining Agreement." See Second Amended Complaint [Doc. # 16] at Count 3, ¶ 5.

Plaintiff's motion for remand argues that his revised claim for intentional infliction of emotional distress does not require interpretation of the collective bargaining agreement, and thus is not preempted by the LMRA. CL&P opposes, and argues that, despite Bartlett's "artful" amendments to his complaint, his intentional infliction of emotional distress claim is ultimately based on the manner in which he was terminated, and therefore is governed by the terms of the collective bargaining agreement between CL&P and Bartlett's representative union. CL&P argues that because resolution of Bartlett's claim will in fact require interpretation of the collective bargaining agreement, his claim is completely preempted by the LMRA.

## II. Discussion

Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act . . . may be brought in any district court of the United States having jurisdiction over the parties . . . ." Section 301 not only confers jurisdiction on the federal courts but also "authorizes federal courts to fashion a body of federal law for the enforcement of these

collective bargaining agreements." Textile Workers v. Lincoln Mills, 353 U.S. 448, 451 (1957). Thus, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles--necessarily uniform throughout the Nation--must be employed to resolve the dispute." Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). The doctrine of preemption applies "only if such application requires the interpretation of a collective-bargaining agreement." Id. at 413; see also Wall v. Construction & General Laborers' Union, 224 F.3d 168, 178 (2d Cir. 2000) ("Section 301 of the LMRA preempts claims that are 'inextricably intertwined with consideration of the terms of [a] labor contract.'") (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)); Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003) ("Not every suit concerning employment or tangentially involving a CBA . . . is preempted by section 301.").

The Supreme Court has made clear that the preemptive force of the LMRA extends to tort claims if any of the legal rights or obligations asserted derive from the collective bargaining agreement, because resolution of such claims would require interpretation of the contract's terms. See Allis-Chalmers, 471

5

U.S. at 212. If, however, state law independently confers the rights or obligations, and the tort claim can thus be resolved without interpretation of the collective bargaining agreement, then the claim is not preempted, regardless of whether the underlying factual questions might also be addressed by the contractual provisions. See Lingle, 286 U.S. at 405-07. Thus, in Allis-Chalmers, 471 U.S. at 213-16, the Supreme Court concluded that the LMRA preempted the plaintiff's state tort claim against his employer for breach of duty of good faith for failing to provide timely disability insurance benefits, because the insurance benefits were required under the collective bargaining agreement, not state law, and resolution of the claim required interpretation of the CBA. See id. at 210 ("State law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by the agreement of the private parties, are pre-empted by those agreements."). In Lingle, however, the Supreme Court concluded that the plaintiff's state tort claim of retaliatory discharge was not preempted by the LMRA, because "the state-law remedy in this case is 'independent' of the collective-bargaining agreement." Id. at 407 (citations omitted). The Court explained:

> We agree with the [appeal] court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis

6

>    dependent upon the contractual analysis. . . § 301 . .
>    .says nothing about the substantive rights a State may
>    provide to workers when adjudication of those rights
>    does not depend upon the interpretation of such
>    agreements. . . .

Id. at 409-10.

In this case, it is necessary to examine the elements of an intentional infliction of emotional distress claim under Connecticut law, and the particular nature of Bartlett's claim, to determine whether the claim requires interpretation of the collective bargaining agreement. To establish a claim for intentional infliction of emotional distress in Connecticut, a plaintiff must prove that "(1)the defendant intended to inflict emotional distress or knew, or should have known, that emotional distress was a likely result of his or her conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's distress; and,(4) the emotional distress sustained by the plaintiff was severe." See Petyan v. Ellis, 200 Conn. 243, 253 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" Appleton v. Board of Education, 254 Conn. 205, 210

(2000) (citation and internal quotation marks omitted).

Bartlett's intentional infliction of emotional distress claim alleges that "CL&P verbally threatened and abused him," required him to "work under hazardous physical conditions with the intended purpose of causing him emotional distress," had him "followed by a private detective," and made "false accusations" about his work performance.[1]  See Second Am. Compl. [Doc. # 16] at Count 3.  CL&P asserts that each of these allegations require interpretation of the collective bargaining agreement.[2]  As to

---

[1] Plaintiff's Second Amended Complaint also states that defendant's treatment was "unrelated to the terms and conditions of the Collective Bargaining Agreement." Second Am. Compl. [Doc. # 16] at Count 3, ¶ 5.  The Court agrees with defendant that such "artful pleading" cannot defeat removal if the underlying claims are preempted by the LMRA.  See Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475-76 (1998).  The Court does not agree, however, that this allegation itself requires interpretation of the CBA, or that "Plaintiff assumed the burden of proving that none of the alleged conduct is related to the CBA, which determination can only be made by an arbitrator in accordance with the CBA's grievance and arbitration procedure." Def.'s Mem. L. Opp. Mot. Remand [Doc. # 19] at 18.  Plaintiff's claim is one of intentional infliction of emotional distress, which is not an arbitrable offense.  While the underlying facts alleged by Bartlett may also be addressed in an arbitration process, so long as the substantive legal obligations in this suit derive from state law, not the CBA, interpretation of the CBA is not necessary.  See Lingle, 286 U.S. at 409-10.

[2] CL&P also argues that these claims, which were made in Bartlett's first and second amended complaints, amount to "artful pleading," and that "[p]laintiff attempts to avoid the LMRA by entirely shifting the underlying factual allegations that give rise to his intentional infliction of emotional distress claim from a claim based on the circumstances of his discharge (original complaint) to a claim based on alleged conduct preceding his discharge (first and second amended complaints)." See Def.'s Mem. L. Opp. Mot. Remand [Doc. # 19] at 8.  While the

Bartlett's claim of verbal abuse, CL&P points to Article IA and Article VII of the CBA, which set forth the rights and obligations of the company, union, and members of the bargaining unit, and which provides for discipline of employees. CL&P states that based on these provisions, "[s]hould management not believe an employee, such as Plaintiff, is fulfilling his obligations and performing his duties as required, it may issue discipline to such employees, including oral reprimands and warnings." Def.'s Mem. L. Opp. Mot. Remand [Doc. # 19] at 11. Whether oral reprimands were permissible under the CBA is however, irrelevant, since nothing in the CBA permits extreme or outrageous verbal abuse wholly unnecessary to serve any

---

Court recognizes that "artful pleading" cannot defeat removal where federal law completely preempts a state law claim, see Rivet, 522 U.S. at 475-76, the allegations in Bartlett's properly amended complaint, not his original complaint, are what must be addressed.

Moreover, contrary to defendant's assertions, the preemption analysis is the same regardless of whether the claim is based on the employer's conduct in the course of the plaintiff's discharge or the employer's conduct during the course of the employment. There certainly is no per se assumption in favor of preemption of termination-related claims. See, e.g. Lingle v. Norge Division of Magic Chef, Inc., 286 U.S. 399 (1988) (concluding that retaliatory discharge claim was not preempted by LMRA). Instead, as with any LMRA preemption claim, the Court must examine whether resolving the claim requires interpretation of the collective bargaining agreement. Interpretation is required if the CBA is the source of the rights, but is not necessary if the CBA is merely the source of incidental facts such as rate of pay, see id. at 413 n. 12, or if the CBA simply provides a procedure to deal with factual allegations that can be independently redressed under state law, see id. at 409-10.

disciplinary objective. While the CBA might describe the circumstances in which a verbal warning is appropriate, it does not set standards for permissible forms of verbal reprimands. Moreover, even assuming what some would characterize as "verbal threats and intimidation" were accepted disciplinary conduct under the CBA, the union cannot waive a member's right to legal protection from this conduct if it rises to the level of "extreme" and "outrageous" conduct that is "utterly intolerable in a civilized community," Appleton, 254 Conn. at 210, such that it is cognizable as a state tort. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 49-51 (1974)(concluding that union could not waive individual right of employee conferred by statute, and noting that the "distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence."); see also Farmer v. United Brotherhood of Carpenters and Joiners of America, 430 U.S. 290, 305 (1977) (finding intentional infliction of emotional distress claim not preempted by National Labor Relations Act ("NLRA"), in part because "California law permits recovery only for emotional distress sustained as a result of 'outrageous' conduct," which under no circumstances would be protected by the NLRA). The fact that the CBA provides a grievance procedure for challenging "the propriety of any such disciplinary action [i.e. whether there was just cause]," CBA

10

[Doc. # 19, Ex. H] at Art. VII, Sec. 2, also does not require a court to reference the CBA to characterize the nature of the conduct employed to effect the discipline. As <u>Lingle</u> instructs, such "parallelism" of the CBA and state law processes is not impermissible if the CBA "says nothing about the substantive rights a State may provide to workers." <u>Lingle</u>, 286 U.S. at 409-10.

For the same reasons, plaintiff's allegations that he was followed by a private detective, and that the company made false accusations about his work performance, likewise would not require interpretation of the CBA, since there is nothing in the grievance and arbitration provisions of the CBA that needs interpretation in order for CL&P to challenge the legal or factual significance of these allegations. To be successful in his claim, Bartlett must prove that CL&P's conduct by its nature rises to the level of outrageousness that is cognizable by state law, that CL&P intended to cause emotional distress with this conduct, and that such distress resulted.[3] Regardless of whether CL&P was justified in taking disciplinary action against Bartlett, the emotional distress claim is concerned with whether

---

[3]The Court notes that the notice pleading standard under Fed. R. Civ. P. 8 does not require that plaintiff's allegations contain the factual detail which would be required under Connecticut rules of practice to support this cause of action, and leaves such claim development and testing to the state court.

11

the manner of CL&P's conduct exceeded "all possible bounds of decency." Appleton, 254 Conn. at 210. Thus, CL&P cannot defend against this claim merely by demonstrating that, under the CBA, preliminary investigatory measures in some form were appropriate, if the actual nature of the conduct violates the state standard. The underlying facts in the state claim may be similar to those explored through the CBA's grievance procedure, but the substantive legal obligations derive from state law, not the CBA.[4]

---

[4] Decisions from this District dealing with LMRA preemption of intentional infliction of emotional distress claims accord with this analysis, and generally have found the claim not preempted when it involved a right independently conferred upon an individual by state law, and preempted when it was inextricably linked to provisions in the CBA. See Carvalho v. International Bridge & Iron Co., 2000 WL 306456, *9 (D.Conn. 2000)(intentional infliction of emotional distress claim not preempted because claim was "based, in part, upon harassing, threatening, and abusive conduct by his supervisors unrelated to any incident of appropriate employee discipline or the termination of his employment."); Vorvis v. Southern New England Telephone Co., 821 F.Supp. 851, 855 (D.Conn. 1993) (intentional infliction of emotional distress claim not preempted where the claim was based on verbal abuse and "extra work assignments for the purpose of causing anxiety, uncompensated work on weekends and evenings, unwarranted vulgar remarks, and disciplinary actions of matters beyond her control."); Claps v. Moliterno Stone Sales, Inc., 819 F.Supp. 141 (D.Conn. 1993) (intentional infliction of emotional distress claims not preempted where defendants allegedly verbally and physically harassed her because of her gender, because claim did not require interpretation of CBA; see also Ellis v. Lloyd, 838 F.Supp. 704, 708 (D.Conn. 1993) (intentional infliction of emotional distress claim preempted because court "could not determine whether the grievances filed against plaintiff by defendant Lloyd and ratified by District 1199 constituted extreme and outrageous conduct without first determining what types of grievances are permitted under the collective bargaining agreement. In other

More persuasively, CL&P also argues that in order to defend against Bartlett's allegation that he was required "to work under hazardous conditions with the intended purpose of causing him emotional distress," Second Am. Compl. [Doc. # 16] at Count 3, ¶ 5, the CBA's provisions on safety must be consulted. As CL&P points out, and plaintiff acknowledged at oral argument, plaintiff's work as a lead cable splicer with a power company is hazardous by its nature, as it involves high voltage power lines and equipment such as underground transformers. See Def.'s Mem. L. Opp. Mot. Remand [Doc. # 19] at 14. As a result, the CBA includes a number of safety requirements, and incorporates as well the Company's "Accident Prevention Manual" and the "safety rules issued by the Public Utility Commission for the State of

---

words, there is simply no independent or 'nonnegotiable' state law standard-outside the agreement-for determining whether the grievances filed against the plaintiff were improper."); D'Amato v. Southern Connecticut Gas Co., 2000 U.S. Dist. LEXIS 18960, *19 (D.Conn. 2000)(intentional infliction of emotional distress claim preempted by LMRA where plaintiff defined claim as "limited to the allegation that SCGC discharged him without 'good cause,'" which "would require the Court to evaluate the conduct of [the employer] in light of the terms of the CBA."); Petrucelli v. Cytec Industries, Inc., 1996 U.S. Dist. LEXIS 22498, * 15 (D.Conn. 1996) (intentional infliction of emotional distress claim preempted where plaintiff's claims were based solely on alleged violations of his recall rights and seniority rights under the CBA); Anderson v. Coca Cola Bottling Co., 772 F.Supp. 77, 82 (1991)(intentional infliction of emotional distress claim preempted because it was based on alleged harassment, which consisted of the issuance of three warnings, and defendants "maintain that the warnings were issued in accordance with the collective bargaining agreement, which requires the employer 'to give at least one (1) warning notice of infraction of rules or of specific complaint, in writing.'").

13

Connecticut." CBA [Doc. # 19] at Art. IX, Sec. 2. The defendant reasons that in order to determine whether subjecting Bartlett to certain work conditions constituted "extreme and outrageous" conduct in satisfaction of one of the elements of his emotional distress claim, therefore, it is necessary to take into account the scope of Bartlett's employment responsibilities and CL&P's safety obligations, which are defined, at least in part, in the CBA.[5]

If plaintiff's claim is construed as predicated only on state statutory and regulatory standards and obligations related to workplace safety,[6] the CBA provisions are not inextricably implicated. Numerous Connecticut statutes govern workplace

---

[5] Plaintiff, at oral argument, proposed a broadened scope to his claim -- that the emotional distress claim encompassed purposeful, disproportionate assignment of him to hazardous duties or conditions. This iteration is ineffective in that it implicates managerial job assignment authority, a claim clearly requiring resort to the CBA for determination.

Plaintiff's argument that his claim survives because it alleges only that he was given hazardous work assignments for improper reasons is also without merit, because an intentional infliction of emotional distress claim must establish more than just a wrongful purpose. To establish a claim for intentional infliction of emotional distress, the plaintiff must show not only that the defendant intended to cause emotional distress and that severe emotional distress resulted, but also that the defendant's conduct was itself objectively extreme and outrageous. See Petyan v. Ellis, 200 Conn. 243, 253 (1986).

[6] See Second Am. Compl. [Doc. # 16] at Count 3, ¶ 5 (stating that claim is "unrelated to the terms and conditions of the Collective Bargaining Agreement").

safety,[7] and establish "a clear and defined public policy requiring an employer who conducts business in Connecticut to provide a reasonably safe work place to its employees."  See Parsons v. Sikorsky Aircraft Division, 243 Conn. 66, 79 (1997). Under Connecticut law, a determination of what is reasonable must take into account what is "contemplated within the scope of the employee's duties."  Id. at 80.  While CL&P may have its own safety manuals describing the safety standards and procedures for its employees' performance of their duties, CL&P remains subject to state regulation.  The CBA itself acknowledges the authority of the "safety rules issued by the Public Utility Commission for the State of Connecticut."  CBA [Doc. # 19] at Art. IX, Sec. 2. Section 16-11-134 of the Connecticut Department of Public Utility Control administrative regulations provides for "acceptable codes" and states that:

> The commission recognizes the provisions of the National Electrical Safety Code and the National Electrical Code in effect from time to time as minimum requirements and recommends the same as a guide to good practice for the installation, maintenance and operation of electrical facilities in all cases not governed by specific commission orders and the provisions of this code as contained herein.

Regs. Conn. State Agencies § 16-11-134.

Thus, to the extent it is the National Electrical Safety Code, as recognized by state regulation, not the terms of the CBA

---

[7] See Parsons v. Sikorsky Aircraft Division, 243 Conn. 66, 77-79 (1997) (citing relevant statutes).

itself, that establishes the minimum standards for the installation, operation, or maintenance of power lines and associated equipment, a court considering Bartlett's emotional distress claim need not interpret the CBA to determine whether the conduct to which he was subjected was "extreme" or "outrageous."[8] Heightened safety standards provided under the CBA would be irrelevant to a claim of intentional infliction of emotional distress, for so long as the activity meets what has been set as minimum state standards, it could not, as a matter of law, constitute conduct "so extreme in degree, as to go beyond all possible bounds of decency." Appleton, 254 Conn. at 210 (citation and internal quotation marks omitted). Likewise, if the CBA provided less protection than state standards required, state law, which is the source of the legal obligation and which cannot be waived by private parties, would control. Under these circumstances, interpretation of the CBA is not required for resolution of Bartlett's intentional infliction of emotional distress claim.

## III. Conclusion

For the foregoing reasons, plaintiff Michael Bartlett's

---

[8] At oral argument, CL&P conceded that if plaintiff's claim of "hazardous working conditions" is construed as those which contravene the minimum safety requirements established by the Connecticut Department of Public Utility Control, the claim would not implicate the CBA and could be brought in state court.

motion to remand [Doc. # 12] is GRANTED. The Clerk is hereby directed to remand this case to the Superior Court for the State of Connecticut, Judicial District of New Britain.

IT IS SO ORDERED.

_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 29th day of January, 2004.